Michael Kind, Esq.
Nevada Bar No.: 13903
KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Phone: (800) 400-6808 x7
FAX: (800) 520-5523
mkind@kazlg.com

David H. Krieger, Esq.
Nevada Bar No.: 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com
*Attorneys for Plaintiff James W. Eiler*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| James W. Eiler,<br><br>       Plaintiff,<br><br>v.<br><br>Novation Credit Union, LexisNexis Risk Solutions, Inc., Equifax Information Services LLC, Experian Information Solutions, Inc. and Trans Union LLC,<br><br>       Defendants. | Case No.:<br><br>**Complaint for Damages Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.**<br><br>**Jury Trial Demanded** |

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

## INTRODUCTION

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Report-ing Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate re-porting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. James W. Eiler ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Novation Credit Union ("Novation"), LexisNexis Risk Solutions, Inc. ("Lexis"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (jointly as "Defendants"), with regard to

erroneous reports of derogatory credit information to national reporting agencies and Defendants' failure to properly investigate Plaintiff's disputes.

4.  Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5.  Defendants failed "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

6.  Defendants failed to comply with its duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

**JURISDICTION AND VENUE**

7.  This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331; *Smith v. Community Citibank, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

8.  This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

9.  Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

**PARTIES**

10. Plaintiff is a natural person residing in Clark County, Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

11. Defendant Novation is a corporation doing business in the State of Nevada.

12. Defendant Lexis is a corporation doing business in the State of Nevada.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

COMPLAINT                                        3

13. Defendant Equifax is a corporation doing business in the State of Nevada.

14. Defendant Experian is a corporation doing business in the State of Nevada.

15. Defendant Trans Union is a corporation doing business in the State of Nevada.

16. Shellpoint Mortgage Servicing ("Shellpoint"), Bank of America ("BOA"), and Novation are each a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnish information to a consumer credit reporting agency.

17. Defendants Lexis, Trans Union LLC, Experian and Equifax regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Defendants are a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

18. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

**GENERAL ALLEGATIONS**

**—Applicable to allegations against Experian, Equifax and Trans Union—**

19. On or about August 31, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. Plaintiff's case was assigned Case Number 11-23915-lbr (the "Chapter 13" or "Bankruptcy").

20. The obligations ("Debt") to each creditor herein (as applicable) were scheduled in the Bankruptcy and each respective creditor, or its predecessor in interest, received notice of the Bankruptcy.

21. On January 25, 2012, Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

COMPLAINT                    4

22. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

23. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan, including all payments to Shellpoint.

24. All of Plaintiff's dischargeable Debts were discharged on October 27, 2016 after completing the Chapter 13 Plan.

25. Plaintiff timely performed all obligations to Shellpoint from the date he filed bankruptcy, and continued to make timely payments to Shellpoint after his bankruptcy discharge.

26. Further, it was illegal and inaccurate for Defendants to report any post-Bankruptcy data that was inconsistent with the Orders entered by the Bankruptcy Court.

27. However, Defendants either reported, caused to be reported, omitted or caused to be omitted information as discussed herein, resulting in incomplete, inaccurate and/or misleading information on Plaintiff's consumer report

28. Additionally, Defendant's incomplete and inaccurate reporting and omissions did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

29. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist credit reporting agencies with their compliance requirements under the FCRA.

30. Courts rely on such guidance to determine FCRA liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

31. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

32. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors, furnishers and CRAs. *See*, *e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

33. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *Id*., with the following relevant exceptions:

a.   Current Balance: "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)," Metro 2 instructs the credit reporting agency to report the "Outstanding balance amount." *Id*.

b.   Scheduled Monthly Payment Amount: "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)," Metro 2 instructs the credit reporting agency to report the outstanding balance amount "updated contractual monthly payment amount."

c.   Account Status: "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example:

mortgage),” Metro 2 instructs the credit reporting agency to report “status that applies.” *Id*. at 6-22

d.      Payment History: “Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage),” Metro 2 instructs to report the outstanding balance amount “first month, increment first position with value ‘D’; in subsequent months, increment Based on the prior month’s status.”p

34.   Despite Metro 2 Format’s instructions, Defendants failed to conform to the Metro 2 Format when reporting on Plaintiff’s accounts after Plaintiff filed Bankruptcy as further set forth below.

35.   In turn, the credit reporting agencies named herein, reported inaccurate information or suppressed accurate information, resulting in an incomplete, inaccurate and/or misleading consumer report, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

36.   To this end, the incomplete reporting on Plaintiff’s consumer report departed from the credit industry’s own reporting standards and was not only incomplete and inaccurate, but also materially misleading under the CDIA’s standards as well.

37.   A “materially misleading” statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

## — THE EQUIFAX VIOLATIONS —

### EQUIFAX FAILED TO REPORT COMPLETE INFORMATION ABOUT SHELLPOINT ACCOUNT NO. ****1402

38. On or about May 22, 2017, Plaintiff requested a consumer file from Equifax and included proper identification, including a driver's license and social security card.

39. Equifax thereafter sent Plaintiff an incomplete consumer file dated May 22, 2017 (the "Credit File").

40. Specifically, Equifax, rather than provide a "complete" and "accurate" Credit File to Plaintiff, "suppressed" positive data being furnished from Shellpoint thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy. However, Equifax alternatively failed to report timely mortgage payments on the Property reported by Shellpoint.

41. This failure caused Plaintiff's Credit File to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to Shellpoint.

42. Specifically, Shellpoint furnished positive credit data to Equifax stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from October 2016 and on (the "Suppressed Positive Data").

43. However, Equifax failed to include the Suppressed Positive Data in Plaintiff's Credit File.

44. Accordingly, on or about November 8, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

45. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

46. Plaintiff included proof of the Suppressed Positive Data, which was provided directly by Shellpoint to Plaintiff.

47. In relevant part, the Equifax Dispute Letter stated:

> As you can see from your credit file and attached documents, I have a mortgage account with Shellpoint Mortgage Servicing (Account No. ****1402) and you are not reporting complete information about this account.  Specifically, I obtained information from Shellpoint … in which Shellpoint provided proof (which I am attaching) it furnished to you that I was "current" with my payments from the date of my Chapter 13 Discharge (October 27, 2016) through present…
>
> It is therefore plainly evidence that you impermissibly suppressing the Positive Credit Data and depriving me of complete and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.

48. Indeed, Plaintiff's dispute clearly laid out the Suppressed Positive Data which Equifax failed to include in Plaintiff's Credit File.

49. After receiving the Equifax Dispute Letter, Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

50. However, Plaintiff never received notification from Equifax through its "reinvestigation" that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).  On information and belief, Equifax failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in Shellpoint's updated tradeline.

51. A reasonable investigation by Equifax would have updated Plaintiff's Shellpoint account to include the Suppressed Positive Data.

52. Equifax therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

53. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.

54. On information and belief, Equifax re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File. Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File. Indeed, the Suppressed Positive Data for October 2016 through April 2017 remained suppressed, negatively impacting Plaintiff's credit score and credit worthiness

55. Equifax, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

56. Furthermore, Equifax violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the Shellpoint tradeline.

57. Equifax also violated 15 U.S.C. § 1681g. Under section 1681g, Equifax was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Equifax violated 15 U.S.C. § 1681g.

58. Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless resulting in this lawsuit. Indeed, Equifax was provided the evidence of its illegal suppression and willfully failed to make the requested corrections to Plaintiff's Credit File.

59. Equifax's continued incomplete and inaccurate reporting of the Suppressed Positive Data in light of its knowledge of the actual errors and omissions was willful. Plaintiff is, accordingly, eligible for statutory damages.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

60. Also as a result of Equifax's continued incomplete and inaccurate reporting of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Equifax's wrongful omissions, damage to Plaintiff's creditworthiness and emotional distress.

61. By reporting incomplete and inaccurate account information relating to Shellpoint's account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

## EQUIFAX FAILED TO REPORT COMPLETE INFORMATION ABOUT BOA ACCOUNT NO. ****317-4

62. On or about May 22, 2017, Plaintiff requested a consumer file from Equifax and included proper identification, including a driver's license and social security card.

63. Equifax thereafter sent Plaintiff an incomplete consumer file dated May 22, 2017 (the "Credit File").

64. Specifically, Equifax, rather than provide a "complete" and "accurate" Credit File to Plaintiff, "suppressed" positive data being furnished from BOA thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.   However, Equifax alternatively failed to report timely mortgage payments on the Property reported by BOA.

65. This failure caused Plaintiff's Credit File to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to BOA.

66. Specifically, BOA furnished positive credit data to Equifax stating that Plaintiff's account was "current" with all ongoing monthly payment

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

obligations from April through May 2017 (the "Suppressed Positive Data") and on.

67. However, Equifax failed to include the Suppressed Positive Data in Plaintiff's Credit File.

68. Accordingly, on or about September 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

69. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

70. Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BOA to Plaintiff.

71. Indeed, the Equifax Dispute Letter clearly laid out the Suppressed Positive Data which Equifax failed to include in Plaintiff's Credit File.

72. After receiving the Equifax Dispute Letter, Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

73. On or about October 19, 2017, Plaintiff received notification from Equifax through its "reinvestigation" that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Equifax failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BOA's updated tradeline.

74. A reasonable investigation by Equifax would have updated Plaintiff's BOA account to include the Suppressed Positive Data.

75. Equifax therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

76.   Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.

77.   Equifax re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File.  Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File, negatively impacting Plaintiff's credit score and creditworthiness. Indeed, Equifax failed to report any of Plaintiff's positive payment history and instead reported the account as included in bankruptcy, even though Plaintiff timely made all payments to BOA during and after his bankruptcy.

78.   Equifax, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

79.   Furthermore, Equifax violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the BOA tradeline. Equifax's violation perfected when it rereported the disputed BOA information on its notice to Plaintiff of the results of its reinvestigation.

80.   Equifax also violated 15 U.S.C. § 1681g.  Under section 1681g, Equifax was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Equifax violated 15 U.S.C. § 1681g.

81.   Plaintiff's efforts to correct Equifax's patently incorrect and materially misleading reporting were fruitless, resulting in this lawsuit. Because even after Plaintiff provided Equifax with BOA's own documents which clearly contradicted Equifax own reporting, Equifax willfully violated its duties under sections 1681i(a) and 1681e(b).

82.   Equifax's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, in light of its knowledge of the actual errors and omissions was willful.   Plaintiff is, accordingly, eligible for statutory and punitive damages.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

83. Also as a result of Equifax's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Equifax's wrongful omissions, damage to Plaintiff's creditworthiness and emotional distress.

84. By reporting incomplete and inaccurate account information relating to Plaintiff's credit history, including the suppression of positive account history on Plaintiff's BOA's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

## Equifax Misreported Credit Information
## Re: BOA Account No. ****9652

85. On or about September 12, 2017, Plaintiff disputed BOA's inaccurate reporting on Plaintiff's Equifax May 23, 2017 credit report, including an inaccurate scheduled payment amount of $596, pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information on Plaintiff's BOA account.   Equifax's reporting of a scheduled payment amount of $596 was inaccurate since Plaintiff owed a $0 balance and the account was closed in February 2011.  Plaintiff owed BOA a $0 balance and it was inaccurate to report that Plaintiff was scheduled to pay $596.

86. Specifically, Plaintiff sent a letter on September 12, 2017, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be removed.

87. Upon receiving that letter, Equifax timely notified BOA of Plaintiff's dispute, but Equifax continued reporting inaccurate information.

88. Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

89. However, Plaintiff never received notification from Equifax that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

90. A reasonable investigation by Equifax would have indicated that Plaintiff's account was closed in February 2011.  A reasonable investigation by Equifax would have indicated that Plaintiff owed a $0 balance.

91. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.

92. Equifax continued to report inaccurate derogatory information on Plaintiff's report.  Specifically, and on information and belief, Equifax still reported that Plaintiff owed an inaccurate scheduled payment amount of $596.  This was inaccurate since Plaintiff's account was closed in February 2011.  Plaintiff owed BOA a $0 balance and it was inaccurate and misleading to report that Plaintiff was scheduled to pay $596.

93. Equifax, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i.

94. Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.

95. Due to the failure by Equifax to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i.

96. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Equifax by communicating Plaintiff's dispute with Equifax were fruitless.

97. Equifax willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error.  Plaintiff is, accordingly, eligible for statutory damages.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

98. Also as a result of the continued inaccurate and negative reporting by Equifax, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, harm to Plaintiff's creditworthiness and emotional distress.

99. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Equifax failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i.

## Novation and Equifax Misreported Credit Information

### Re: Account No. ****0550

### —General Allegations—

100. On or about August 31, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 et seq. Plaintiff's case was assigned Case Number 11-23915-lbr (the "Chapter 13" or "Bankruptcy").

101. The obligations to Novation were scheduled in the Bankruptcy and Novation, or its predecessor in interest, received notice of the Bankruptcy.

102. On January 25, 2012, Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

103. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

104. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

105. Novation never filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

106. Novation never obtained relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while Plaintiff's Bankruptcy was pending to pursue Plaintiff for any *personal* liability.

107. All Plaintiff's debts were accordingly discharged and the account was discharged through the Bankruptcy on October 27, 2016.

108. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

109. However, Defendants either reported or caused to be reported inaccurate information as discussed herein after Plaintiff's debts were discharged.

110. Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

111. The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

112. Courts rely on such guidance to determine furnisher liability. *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

113. On information and belief, the defendants named herein adopted and at all times relevant implemented the Metro 2 format.

114. On information and belief, each furnisher named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format

COMPLAINT                                    17

as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

115. The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs. *See*, *e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 – 6-22.

116. Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *Id*., with the following relevant exceptions:

a.   Current Balance

    i.   For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs to report the outstanding balance amount. *Id*.

    ii.   However, for the "Plan Confirmed" period, Metro 2 instructs to report the "Chapter 13 plan balance, which should decline as payments are made." *Id*. at 6-22.

    iii.   And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs to report a current balance of "Zero." *Id*.

b.   Scheduled Monthly Payment Amount:

    i.   For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs to report the "contractual monthly payment amount." *Id*. at 6-21.

    ii.   However, for the "Plan Confirmed" period, Metro 2 instructs to report the "Chapter 13 Payment Amount." *Id*. at 6-22.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs to report a current balance of "Zero." *Id*.

117. Despite Metro 2 Format's instructions, Novation and Equifax failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed Bankruptcy as further set forth below.

118. In turn, Equifax, re-reported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

119. To this end, the adverse reporting on Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

120. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

### Novation and Equifax Misreported Credit Information

121. On or about September 12, 2017, Plaintiff disputed Novation's inaccurate reporting on Plaintiff's Equifax May 25, 2017 credit report, including inaccurate "late" notations, "charge off" notations and "date of major delinquency," pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Novation. Novation's and Equifax's reporting was inaccurate since Plaintiff filed for bankruptcy on August 31, 2011 and received a bankruptcy discharge in October 2016. From the date of his bankruptcy filing, Plaintiff fully performed all of his obligations to Novation and it was inaccurate to report that Plaintiff was "late."

122. Specifically, Plaintiff sent a letter on September 12, 2017, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be removed.

123. Upon receiving that letter, Equifax timely notified Novation of Plaintiff's dispute, but Equifax and Novation continued reporting inaccurate information.

124. Equifax and Novation were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

125. On or about 10/19/17, Plaintiff received notification from Equifax that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

126. A reasonable investigation by Equifax and Novation would have indicated that Plaintiff filed for bankruptcy and fully performed all of his obligations to Novation from August 2011.

127. Equifax and Novation failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

128. Equifax and Novation continued to report inaccurate derogatory information on Plaintiff's report.  Specifically, Equifax and Novation still reported that Plaintiff was "late" from September through November 2011, which was inaccurate since Plaintiff performed all of his obligations to Novation during that time. Equifax and Novation further reported that Plaintiff's date of first major delinquency was in December 2011, which was inaccurate since Plaintiff filed bankruptcy in August 2011 and the date of first major delinquency should have been no later than August 2011. Thus, Equifax and Novation were illegally re-aging the debt, causing negative information to remain on Plaintiff's consumer report longer than permissible under the

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

FCRA. Equifax and Novation also inaccurately reported the account with a status of "charge off" which was inaccurate since the debt was included in Plaintiff's bankruptcy. Furthermore, Equifax and Novation inaccurately reported that Plaintiff's account was "charged off" on multiple months, which is inaccurate since a charge can only occur one time.

129. Equifax and Novation, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

130. Equifax and Novation failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

131. Due to the failure by Equifax and Novation to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

132. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Equifax and Novation by communicating Plaintiff's dispute with Equifax and Novation were fruitless.

133. Equifax and Novation willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

134. Also as a result of the continued inaccurate and negative reporting by Equifax and Novation, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, harm to Plaintiff's creditworthiness and emotional distress.

135. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Equifax and Novation failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## — THE EXPERIAN VIOLATIONS —

### EXPERIAN FAILED TO REPORT COMPLETE INFORMATION ABOUT BOA ACCOUNT NO. ****317-4

136. On or about May 22, 2017, Plaintiff requested a consumer file from Experian and included proper identification, including a driver's license and social security card.

137. Experian thereafter sent Plaintiff an incomplete consumer file dated May 22, 2017 (the "Credit File").

138. Specifically, Experian, rather than provide a "complete" and "accurate" Credit File to Plaintiff, "suppressed" positive data being furnished from BOA thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.   However, Experian alternatively failed to report timely mortgage payments on the Property reported by BOA.

139. This failure caused Plaintiff's Credit File to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to BOA.

140. Specifically, BOA furnished positive credit data to Experian stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from April through May 2017 (the "Suppressed Positive Data") and on.

141. However, Experian failed to include the Suppressed Positive Data in Plaintiff's Credit File.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

142. Accordingly, on or about September 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

143. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

144. Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BOA to Plaintiff.

145. Indeed, the Experian Dispute Letter clearly laid out the Suppressed Positive Data which Experian failed to include in Plaintiff's Credit File.

146. After receiving the Experian Dispute Letter, Experian was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

147. On or about October 19, 2017, Plaintiff received notification from Experian through its "reinvestigation" that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Experian failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BOA's updated tradeline.

148. A reasonable investigation by Experian would have updated Plaintiff's BOA account to include the Suppressed Positive Data.

149. Experian therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

150. Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i.

151. Experian re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File. Specifically, the Suppressed Positive Data continued

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

to remain suppressed and willfully omitted from Plaintiff's Credit File, negatively impacting Plaintiff's credit score and creditworthiness. Indeed, although Experian reported that Plaintiff was current in October 2017, Experian failed to report Plaintiff's positive payment history from April 2017.

152. Experian, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

153. Furthermore, Experian violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the BOA tradeline. Experian's violation perfected when it rereported the disputed BOA information on its notice to Plaintiff of the results of its reinvestigation.

154. Experian also violated 15 U.S.C. § 1681g.  Under section 1681g, Experian was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Experian violated 15 U.S.C. § 1681g.

155. Plaintiff's efforts to correct Experian's patently incorrect and materially misleading reporting were fruitless, resulting in this lawsuit. Because even after Plaintiff provided Experian with BOA's own documents which clearly contradicted Experian own reporting, Experian willfully violated its duties under sections 1681i(a) and 1681e(b).

156. Experian's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory and punitive damages.

157. Also as a result of Experian's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

Experian's wrongful omissions, damage to Plaintiff's creditworthiness and emotional distress.

158. By reporting incomplete and inaccurate account information relating to Plaintiff's credit history, including the suppression of positive account history on Plaintiff's BOA's Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

### Novation and Experian Misreported Credit Information
### Re: Account No. ****0550

159. Plaintiff incorporates by reference paragraphs 100 - 120 of this Complaint as though fully stated herein.

160. On or about September 12, 2017, Plaintiff disputed Novation's inaccurate reporting on Plaintiff's Experian May 22, 2017 credit report, including inaccurate "late" notations and "charge off" notations, pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by Novation.  Novation's and Experian's reporting was inaccurate since Plaintiff filed for bankruptcy on August 31, 2011 and received a bankruptcy discharge in October 2016.  From the date of his bankruptcy filing, Plaintiff fully performed all of his obligations to Novation and it was inaccurate to report that Plaintiff was "late."

161. Specifically, Plaintiff sent a letter on September 12, 2017, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be removed.

162. Upon receiving that letter, Experian timely notified Novation of Plaintiff's dispute, but Experian and Novation continued reporting inaccurate information.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

163. Experian and Novation were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

164. On or about October 16, 2017, Plaintiff received notification from Experian that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

165. A reasonable investigation by Experian and Novation would have indicated that Plaintiff filed for bankruptcy and fully performed all of his obligations to Novation from August 2011.

166. Experian and Novation failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

167. Experian and Novation continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Experian and Novation still reported that Plaintiff was "late" from September through November 2011, which was inaccurate since Plaintiff performed all of his obligations to Novation during that time. Experian and Novation also inaccurately reported the account as "charged off" which was inaccurate since the debt was included in Plaintiff's bankruptcy. Furthermore, Experian and Novation inaccurately reported that Plaintiff's account was "charged off" on multiple months, which is inaccurate since a charge can only occur one time.

168. Experian and Novation, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

169. Experian and Novation failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

170. Due to the failure by Experian and Novation to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

171. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Experian and Novation by communicating Plaintiff's dispute with Experian and Novation were fruitless.

172. Experian and Novation willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

173. Also as a result of the continued inaccurate and negative reporting by Experian and Novation, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, harm to Plaintiff's creditworthiness and emotional distress.

174. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Experian and Novation failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## — THE LEXISNEXIS VIOLATIONS —

### Lexis Misreported Plaintiff's Information

175. In a Lexis credit report dated July 13, 2017, Lexis reported multiple inaccurate versions of Plaintiff's name, including "James Wendel" and "James L Eiler." Lexis also inaccurately reported Plaintiff's home address and year of birth.

176. On or about September 12, 2017, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Lexis's reported information regarding Plaintiff's name,

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

address and other inaccurate information, by notifying Lexis, in writing, of the incorrect and inaccurate information.

177. Specifically, Plaintiff sent a letter, certified, return receipt, to Lexis   (the "Lexis    Dispute Letter"), requesting the above inaccurate and incorrect information be removed, corrected or deleted.

178. Defendant Lexis was required to conduct an investigation into this specific dispute by Plaintiff regarding inaccurate names listed on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

179. On or about September 21, 2018, Plaintiff received notification from Lexis. However, Defendant continued to report erroneous and misleading versions of Plaintiff's name and address, including: "James Wendel" and "James L Eiler." Defendant's inaccurate reporting caused Plaintiff's consumer report to include information that was, in fact, not associated with Plaintiff, creating a "mixed file." For example, Plaintiff's consumer report showed that Plaintiff owned a Chrysler car, which was not true. Plaintiff's consumer report also showed an address not in fact associated with Plaintiff.

180. Lexis failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

181. Lexis failed to review all relevant information provided by Plaintiff in the dispute to Lexis , as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

182. Lexis re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, Lexis continued to report incorrect names and addresses associated with Plaintiff, after Plaintiff specifically disputed Lexis' reporting of Plaintiff's name and address.

183. Lexis, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. § 1681i(a).

184. Due to Lexis's failure to reasonably investigate Plaintiff's dispute, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 1681e(b).

185. Lexis violated 15 U.S.C. § 1681e(b) when it failed to fulfill its duty to follow reasonable procedures to assure maximum possible accuracy under when preparing a consumer report, especially after Plaintiff put Lexis on notice that it was reporting inaccurate names associated with Plaintiff.

186. Plaintiff's efforts to correct Lexis 's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with Lexis were fruitless.

187. Lexis 's continued inaccurate and misleading reporting of Plaintiff's name and address in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

188. As a result of Lexis 's continued inaccurate reporting, Plaintiff faces the concrete risk that his credit information would be mixed with other people since Lexis is incorrectly associating Plaintiff with other peoples' names and addresses.

189. By inaccurately reporting account information after notice and confirmation of its errors, Lexis failed to take the appropriate measures as required under 15 U.S.C. §§ 1681i(a) and 1681e(b), respectively.

— **THE TRANS UNION VIOLATIONS** —

**TRANS UNION FAILED TO REPORT COMPLETE INFORMATION ABOUT**

**SHELLPOINT ACCOUNT NO. ****1402**

190. On or about November 8, 2017, Plaintiff requested a consumer file from Trans Union. Trans Union sent Plaintiff an incomplete consumer file dated November 8, 2017 (the "Credit File").

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148

191. Specifically, Trans Union, rather than provide a "complete" and "accurate" Credit File to Plaintiff, "suppressed" positive data being furnished from Shellpoint thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy. However, Trans Union alternatively failed to report timely mortgage payments on the Property reported by Shellpoint.

192. This failure caused Plaintiff's Credit File to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to Shellpoint.

193. Specifically, Shellpoint furnished positive credit data to Trans Union stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from October 2016 and on (the "Suppressed Positive Data").

194. However, Trans Union failed to include the Suppressed Positive Data in Plaintiff's Credit File.

195. Accordingly, on or about November 8, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Trans Union's incomplete reporting by notifying Trans Union, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

196. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union (the "Trans Union Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

197. Plaintiff included proof of the Suppressed Positive Data, which was provided directly by Shellpoint to Plaintiff.

198. Indeed, Plaintiff's dispute clearly laid out the Suppressed Positive Data which Trans Union failed to include in Plaintiff's Credit File.

199. After receiving the Trans Union Dispute Letter, Trans Union was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

200. On or about November 27, 2017, Plaintiff received notification from Trans Union through its "reinvestigation" that Trans Union received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). Trans Union failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in Shellpoint's updated tradeline.

201. A reasonable investigation by Trans Union would have updated Plaintiff's Shellpoint account to include the Suppressed Positive Data.

202. Trans Union therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

203. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

204. Trans Union re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File. Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File. Indeed, the Suppressed Positive Data for October 2016 through April 2017 remained suppressed, negatively impacting Plaintiff's credit score and credit worthiness. In fact, Trans Union now reported that Plaintiff owed a $0 balance and the account was included in bankruptcy. Trans Union now deleted all of Plaintiff's payment history.

205. Trans Union, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

206. Furthermore, Trans Union violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the Shellpoint tradeline.

207. Trans Union also violated 15 U.S.C. § 1681g.   Under section 1681g, Trans Union was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Trans Union violated 15 U.S.C. § 1681g.

208. Plaintiff's efforts to correct Trans Union's incomplete and inaccurate reporting were fruitless resulting in this lawsuit.   Indeed, Trans Union was provided the evidence of its illegal suppression and willfully failed to make the requested corrections to Plaintiff's Credit File.

209. Trans Union's continued incomplete and inaccurate reporting of the Suppressed Positive Data in light of its knowledge of the actual errors and omissions was willful.   Plaintiff is, accordingly, eligible for statutory damages.

210. Also as a result of Trans Union's continued incomplete and inaccurate reporting of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Trans Union's wrongful omissions, damage to Plaintiff's creditworthiness and emotional distress.

211. By reporting incomplete and inaccurate account information relating to Shellpoint's account after notice and confirmation of its errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

**TRANS UNION FAILED TO REPORT COMPLETE INFORMATION ABOUT BOA ACCOUNT NO. ****317-4**

212. On or about May 23, 2017, Plaintiff requested a consumer file from Trans Union and included proper identification, including a driver's license and social security card.

213. Trans Union thereafter sent Plaintiff an incomplete consumer file dated May 23, 2017 (the "Credit File").

214. Specifically, Trans Union, rather than provide a "complete" and "accurate" Credit File to Plaintiff, "suppressed" positive data being furnished from BOA thereby depriving Plaintiff of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy. However, Trans Union alternatively failed to report timely mortgage payments on the Property reported by BOA.

215. This failure caused Plaintiff's Credit File to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to BOA.

216. Specifically, BOA furnished positive credit data to Trans Union stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from April through May 2017 (the "Suppressed Positive Data") and on.

217. However, Trans Union failed to include the Suppressed Positive Data in Plaintiff's Credit File.

218. Accordingly, on or about September 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Trans Union's incomplete reporting by notifying Trans Union, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

219. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union (the "Trans Union Dispute Letter"), requesting the above incomplete and

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

misleading information omissions be corrected to include the Suppressed Positive Data.

220. Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BOA to Plaintiff.

221. Indeed, the Trans Union Dispute Letter clearly laid out the Suppressed Positive Data which Trans Union failed to include in Plaintiff's Credit File.

222. After receiving the Trans Union Dispute Letter, Trans Union was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

223. On or about October 18, 2017, Plaintiff received notification from Trans Union through its "reinvestigation" that Trans Union received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).   However, Trans Union failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BOA's updated tradeline.

224. A reasonable investigation by Trans Union would have updated Plaintiff's BOA account to include the Suppressed Positive Data.

225. Trans Union therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

226. Trans Union failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i.

227. Trans Union re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File. Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File, negatively impacting Plaintiff's credit score and creditworthiness. Indeed, although Trans Union reported that Plaintiff was current from June

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

2017, Trans Union failed to report Plaintiff's positive payment history for April and May 2017.

228. Moreover, the very next month, on Plaintiff's November 27, 2017 consumer report, Trans Union, then removed Plaintiff's positive payment history from June 2017 that was previously reporting, in violation of sections 1681i. Thus, Trans Union was suppressing Plaintiff's positive payment history from at least April 2017 through August 2017. Trans Union's actions caused Plaintiff's credit score to be lower than it would be had Trans Union accurately reported the Suppressed Positive Data furnished by BOA.

229. Trans Union, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

230. Furthermore, Trans Union violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the BOA tradeline. Trans Union's violation perfected when it rereported the disputed BOA information on its notice to Plaintiff of the results of its reinvestigation.

231. Trans Union also violated 15 U.S.C. § 1681g.  Under section 1681g, Trans Union was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Trans Union violated 15 U.S.C. § 1681g.

232. Plaintiff's efforts to correct Trans Union's patently incorrect and materially misleading reporting were fruitless, resulting in this lawsuit. Because even after Plaintiff provided Trans Union with BOA's own documents which clearly contradicted Trans Union own reporting, Trans Union willfully violated its duties under sections 1681i(a) and 1681e(b).

233. Trans Union's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory and punitive damages.

234. Also as a result of Trans Union's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation fear of credit denials, out-of-pocket expenses in challenging Trans Union's wrongful omissions, damage to Plaintiff's creditworthiness and emotional distress.

235. By reporting incomplete and inaccurate account information relating to Plaintiff's credit history, including the suppression of positive account history on Plaintiff's BOA's Account after notice and confirmation of its errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

### Novation and Trans Union Misreported Credit Information
### Re: Account No. ****0550

236. Plaintiff incorporates by reference paragraphs 100 - 120 of this Complaint as though fully stated herein.

237. On or about September 12, 2017, Plaintiff disputed Novation's inaccurate reporting on Plaintiff's Trans Union May 23, 2017 credit report, including inaccurate "late" notations and "charge off" notations, pursuant to 15 U.S.C. § 1681i(a)(2) by notifying Trans Union, in writing, of the incorrect and inaccurate credit information furnished by Novation.  Novation's and Trans Union's reporting was inaccurate since Plaintiff filed for bankruptcy on August 31, 2011 and received a bankruptcy discharge in October 2016.  From the date of his bankruptcy filing, Plaintiff fully performed all of his obligations to Novation and it was inaccurate to report that Plaintiff was "late."

238. Specifically, Plaintiff sent a letter on September 12, 2017, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be removed.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

239. Upon receiving that letter, Trans Union timely notified Novation of Plaintiff's dispute, but Trans Union and Novation continued reporting inaccurate information.

240. Trans Union and Novation were required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i and 15 U.S.C. §1681s-2(b).

241. On or about October 18, 2017, Plaintiff received notification from Trans Union that Trans Union received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

242. A reasonable investigation by Trans Union and Novation would have indicated that Plaintiff filed for bankruptcy and fully performed all of his obligations to Novation from August 2011.

243. Trans Union and Novation failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B).

244. Trans Union and Novation continued to report inaccurate derogatory information on Plaintiff's report. Specifically, Trans Union and Novation still reported that Plaintiff was "late" from September through November 2011, which was inaccurate since Plaintiff performed all of his obligations to Novation during that time. Trans Union and Novation also inaccurately reported the account as "charged off" which was inaccurate since the debt was included in Plaintiff's bankruptcy. Furthermore, Trans Union and Novation inaccurately reported that Plaintiff's account was "charged off" on multiple months, which is inaccurate since a charge can only occur one time.

245. Trans Union and Novation, upon receipt of Plaintiff's dispute, failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(A), respectively.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

246. Trans Union and Novation failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(B), respectively.

247. Due to the failure by Trans Union and Novation to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and 15 U.S.C. § 1681-s(2)(b)(1)(C).

248. Plaintiff's continued efforts to correct the erroneous and negative reporting of the Debt by Trans Union and Novation by communicating Plaintiff's dispute with Trans Union and Novation were fruitless.

249. Trans Union and Novation willfully continued to inaccurately and negatively report the debt because they had knowledge of the actual error. Plaintiff is, accordingly, eligible for statutory damages.

250. Also as a result of the continued inaccurate and negative reporting by Trans Union and Novation, Plaintiff has suffered actual damages, including without limitation, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, harm to Plaintiff's creditworthiness and emotional distress.

251. By inaccurately reporting account information relating to the debt after notice and confirmation of their errors, Trans Union and Novation failed to take the appropriate measures as required under 15 U.S.C.§§ 1681i and 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681, *et Seq*.**

252. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

253. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681, *et Seq.*.

254. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

255. As a result of each and every negligent noncompliance of the FCRA (by each Defendant, except Lexis), Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1) (as to all Defendants, except Lexis);

- An award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

KAZEROUNI LAW GROUP, APC
6069 South Fort Apache Road, Suite 100
Las Vegas. Nevada 89148

**TRIAL BY JURY**

256. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 10th day of September 2018.

Respectfully submitted,

**Kazerouni Law Group, APC**

By: /s/ Michael Kind
Michael Kind, Esq.
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
*Attorneys for Plaintiff*